IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2017 Session

## SECURAMERICA BUSINESS CREDIT v. SOUTHLAND TRANSPORTATION CO., LLC, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-001803-07      Donna M. Fields, Judge**

_____

### No. W2016-02505-COA-R3-CV

_____

This is the fourth appeal in a case primarily concerned with whether two individual defendants are liable on loan guaranties. Following the third appeal, we remanded the case to the trial court to determine: (1) whether one of the defendants is liable under a Guaranty of Validity of Collateral ("GVC"); (2) whether prejudgment interest should be awarded to the lender on personal guaranties both defendants signed; and (3) whether the lender is entitled to recover additional attorney's fees incurred in enforcing the guaranties since the previous appeal. On remand following the third appeal, the trial court found that the defendant was not liable on the GVC. The trial court also found that the lender was not entitled to prejudgment interest because the lender committed fraud, and it declined to award the lender any additional attorney's fees. Although the defendants prevailed on all three issues, they appeal, seeking reconsideration of this court's determination in an earlier appeal that the defendants failed to prove their claim of fraud, which would relieve them of any liability. The lender counters, insisting that this court's previous decision, wherein we affirmed the trial court's determination that the defendants failed to prove fraud, is the law of the case. The lender also raises its own issues for our consideration, including whether the trial court's findings of fact and conclusions of law concerning fraud, as stated in the final order drafted by counsel for the defendants, reflects the trial court's independent judgment. A careful review of the trial court's oral ruling from the bench and the written order, as well as previous findings of fact made by the trial court, leads us to conclude that some of the findings of fact stated in the final order do not reflect the trial court's independent judgment. Therefore, the presumption under Tenn. R. App. P. 13(d) that a trial court's specific findings of fact are supported by the evidence shall be limited to those findings that appear to reflect the independent judgment of the trial court. We have also determined that the law of the case doctrine precludes us from reconsidering the defendants' claim of fraud. We affirm the trial court's determination that one of the defendants is not liable on the GVC, albeit, on different grounds. We reverse the trial court's decision not to award the lender prejudgment interest and additional attorney's fees, finding that the lender has a statutory right to prejudgment

interest and a contractual right to recover reasonable and necessary attorney's fees that the lender incurred to enforce the guaranties. Therefore, we remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S. and KENNY W. ARMSTRONG, J. joined.

David J. Cocke, Memphis, Tennessee, for the appellants, Terry A. Lynch and Karl Schledwitz.

William O. Luckett, Jr., Clarksdale, Mississippi, and Lorrie K. Ridder, Indianapolis, Indiana, for the appellee, SecurAmerica Business Credit.

**OPINION**

Defendants**,** Karl Schledwitz and Terry A. Lynch co-owned Southland Transportation ("Southland"), a trucking company. In 1999, Southland and SecurAmerica Business Credit ("SecurAmerica") entered into a Secured Revolving Credit Agreement ("Credit Agreement"), whereby SecurAmerica provided a revolving line of credit to Southland, secured primarily by Southland's accounts receivable. Pursuant to the agreement, SecurAmerica made regular advances to Southland based on the day-to-day value of the accounts receivable as evidenced by borrowing base certificates. Southland then directed its customers to send payments to a "blocked account," which would be wired to SecurAmerica toward satisfaction of the loan.

Mr. Schledwitz and Mr. Lynch signed personal guaranties in the amount of $500,000 each, and Mr. Schledwitz signed a Guaranty of Validity of Collateral ("GVC") whereby Mr. Schledwitz, but not Mr. Lynch, guaranteed that the accounts receivable were bona fide, existing accounts. Mr. Schledwitz agreed to pay any damages that proximately resulted from a breach of the agreement. The GVC stated that it remained in effect until Southland paid the loan in full.

In August 2000, Mr. Schledwitz and Mr. Lynch sold Southland to two employees, Michael Harrell and Michael Lucchesi. Mr. Schledwitz and Mr. Lynch remained liable on their guaranties, and Mr. Schledwitz remained liable on the GVC. Consequently, both Mr. Schledwitz and Mr. Lynch retained the power to inspect Southland's financial records. After the sale of the business, Southland began to suffer financially. To continue to obtain advances from SecurAmerica, Mr. Harrell falsified the accounts receivable on

the borrowing base certificates with the knowledge and consent of SecurAmerica's president, Randall Reagan.[1] Thus, SecurAmerica advanced money to Southland based on falsified accounts receivable. In February 2001, Southland ceased doing business and defaulted on the loan.

In March 2001, SecurAmerica filed a complaint in the Shelby County Chancery Court against Southland, Mr. Schledwitz, Mr. Lynch, Mr. Lucchesi, and Mr. Harrell seeking (1) judgment against Southland on the loan, (2) judgment against all of the defendants for fraud in connection with the falsified accounts receivable, (3) judgment against Mr. Schledwitz and Mr. Lynch on their personal guaranties, and (4) judgment against Mr. Schledwitz on the GVC.

In their answer, Mr. Schledwitz and Mr. Lynch asserted the affirmative defense of fraud by SecurAmerica. They also alleged that SecurAmerica had (1) breached the implied covenant of good faith and fair dealing, (2) failed to preserve the collateral, and (3) significantly increased the risk of nonpayment by Southland. In addition, they filed a cross-claim against Southland and against Mr. Reagan in both his individual and corporate capacities, alleging conspiracy and fraud. Thereafter, they amended their counterclaim against SecurAmerica and their cross-claim against Southland and Mr. Reagan to allege violations of the Tennessee Consumer Protection Act ("TCPA").

The case was tried without a jury on January 7 through January 15, 2008. The trial court entered a judgment, finding that Mr. Schledwitz and Mr. Lynch were liable on their personal guaranties; however, SecurAmerica was not entitled to prejudgment interest because SecurAmerica, through Mr. Reagan, committed fraud by participating in the fabrication of Southland's accounts receivable. The trial court determined that SecurAmerica was entitled to attorney's fees pursuant to the attorney's fees provision in the personal guaranties and ordered Mr. Schledwitz and Mr. Lynch to each pay SecurAmerica $125,000 in fees. The trial court dismissed SecurAmerica's claims against Mr. Schledwitz on the GVC, and also dismissed Mr. Schledwitz and Mr. Lynch's claims under the TCPA. Mr. Schledwitz and Mr. Lynch appealed.

In the first appeal, we ruled that (1) while the trial court found that SecurAmerica and Southland acted fraudulently, it did not make the specific and consistent findings of fact necessary for this court to review the trial court's decision, and (2) though litigated at trial, the trial court did not address Mr. Schledwitz and Mr. Lynch's affirmative defense that SecurAmerica breached its duty of good faith and fair dealing, which would affect their liability as guarantors. *See SecurAmerica Business Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *13 (Tenn. Ct. App. Aug. 26, 2011).

---

[1] Mr. Reagan believed that if SecurAmerica continued to lend operating capital to Southland, it would prevent Southland from failing and defaulting on its loan.

Accordingly, we vacated the trial court's decision and remanded the case for further proceedings. *See Id.*

On remand in 2012, the trial court found that the wrongful actions of Mr. Reagan could be imputed to SecurAmerica because Mr. Reagan acted as an agent of SecurAmerica. The trial court further ruled that though Mr. Reagan participated in a scheme with Mr. Harrell to falsify Southland's accounts receivable, Mr. Schledwitz and Mr. Lynch failed to prove that they justifiably relied on Mr. Reagan's misrepresentations, which is an essential element of fraud. Accordingly, the defendants' claim of fraud against SecurAmerica failed. The trial court also relieved Mr. Schledwitz and Mr. Lynch of any liability under their personal guaranties because SecurAmerica, through the acts of Mr. Reagan, violated its duty of good faith and fair dealing by fabricating the accounts. Although the trial court previously dismissed the TCPA claim, the court readdressed the issue and ruled that Southland and SecurAmerica entered into a conspiracy to violate the TCPA. SecurAmerica appealed.

In the second appeal, we affirmed the trial court's ruling that the actions of Mr. Reagan were imputed to SecurAmerica, and that Mr. Schledwitz and Mr. Lynch failed to prove fraud. *See SecurAmerica Business Credit v. Schledwitz*, No. W2012-02605-COA-R3-CV, 2014 WL 1266121, at *1 (Tenn. Ct. App. Mar. 28, 2014). On all other issues, we determined that the trial court did not make sufficient findings of fact and conclusions of law. *See id.* As a consequence, we vacated the trial court's ruling that Southland and SecurAmerica entered into a conspiracy to violate the TCPA and that SecurAmerica breached its duty of good faith and fair dealing. *See id.* We also vacated the trial court's decision that Mr. Schledwitz and Mr. Lynch were not liable under the guaranties and remanded the case to the trial court to make further findings of fact and conclusions of law on those issues. *See id.*

On remand, the trial court again found that Southland and SecurAmerica, through the actions of Mr. Reagan, entered into a conspiracy to violate the TCPA and that SecurAmerica violated its duty of good faith and fair dealing, thereby relieving Mr. Schledwitz and Mr. Lynch of their liability under the guaranties. SecurAmerica appealed.

In the third appeal, we reversed the trial court's finding that Southland and SecurAmerica's acts affected trade or commerce within the meaning of the TCPA. *See SecurAmerica Business Credit v. Southland Transportation*, No. W2015-00391-COA-R3-CV, 2016 WL 1292087, at *1 (Tenn. Ct. App. Apr. 1, 2016). Accordingly, we reversed the trial court's determination that Mr. Schledwitz and Mr. Lynch should be released from their guaranties. *See id.* We remanded the case to the trial court to determine the remaining three issues in the case: (1) whether Mr. Schledwitz was liable under the GVC; (2) whether prejudgment interest should be awarded to SecurAmerica; and (3) whether SecurAmerica was entitled to attorney's fees. *See id.* at *8.

Following the third remand, the trial court determined that SecurAmerica "failed to prove that Mr. Schledwitz breached the GVC's terms, failed to prove that any purported breach of the GVC proximately caused [SecurAmerica] to suffer any damages, breached its duty of good faith and fair dealing, and committed fraud against Mr. Schledwitz as to the GVC." The trial court also ruled that SecurAmerica was not entitled to prejudgment interest on the personal guaranties, nor was it entitled to attorney's fees. Some of the reasons for these rulings, as they were explained by the trial court, are stated in more detail below.

In its final order, the trial court noted that it disagreed with SecurAmerica's arguments concerning Mr. Schledwitz's obligations under the GVC wherein SecurAmerica alleged that although Mr. Schledwitz warranted that Southland's accounts receivable were valid and existing, they were not. Moreover, because the collateral was insufficient to satisfy the loan, Mr. Schledwitz's breach caused SecurAmerica to suffer damages. Contrary to these arguments, the trial court ruled that Mr. Schledwitz was not liable on the GVC because Mr. Harrell and Mr. Reagan altered the contract by agreeing to falsify the accounts receivable. The trial court determined that "[i]t was no longer Mr. Schledwitz's agreement or the agreement that was represented to him or required of him by SecurAmerica." Therefore, Mr. Schledwitz could not be held liable on the GVC. Moreover, the trial court ruled that the fraudulent acts of Mr. Harrell and Mr. Reagan "vitiat[ed] the obligations of Mr. Schledwitz under the GVC."

SecurAmerica also argued that because the GVC required Mr. Schledwitz to act in good faith with respect to the collateral, he breached the agreement when he transferred and sold equipment used to collateralize the subject loan. The trial court found that Mr. Schledwitz did not breach the GVC by transferring the equipment because "the debt associated with the equipment was owed to another bank, and as a result of the transfer of such equipment, Southland's existing liabilities for ongoing operating expenses decreased."

Finally, SecurAmerica argued that the GVC required Mr. Schledwitz to assist SecurAmerica with collecting the accounts receivable should Southland default on the loan. When Southland defaulted, Mr. Schledwitz refused to do so. The court ruled that Mr. Schledwitz did not breach that provision in the agreement because SecurAmerica never asked Mr. Schledwitz to assist with collections.

As to prejudgment interest on the defendants' personal guaranties, the trial court ruled that, under equitable principles, SecurAmerica was not entitled to prejudgment interest because it committed fraud and violated the Business and Industrial Development Corporations ("BIDCO") statute. The trial court reinstated the original 2009 award of $125,000 in attorney's fees to SecurAmerica, which it incurred in enforcing the personal guaranties, but denied any additional fees. The trial court ruled:

This Court therefore finds, and so orders, that (i) no award of additional attorneys' fees be granted to [SecurAmerica] with regard to any of the appeals taken in this matter, (ii) that [SecurAmerica] be awarded attorneys' fees in the amount of $125,000 against each of the Defendants, Karl Schledwitz and Terry Lynch, and (iii) that the parties shall be responsible for their own attorneys [sic] fees, costs and expenses with regard to all appeals taken in this matter.

This appeal followed.

## ISSUES

The parties present fifteen issues[2] for our consideration; however, we have consolidated them into five:

---

[2] Mr. Schledwitz and Mr. Lynch asked us to consider the following issues:

1. Whether the trial court's additional findings of fact vitiate this Court's prior rulings regarding the liability of [Mr. Schledwitz and Mr. Lynch] on their personal guaranties and whether those rulings should be considered the law of the case.
2. Whether the trial court's additional evidence and findings justify this Court's departing from or reconsidering this Court's ruling regarding judgment against [Mr. Schledwitz and Mr. Lynch] on their personal guaranties.
3. Whether the evidence offered at the hearing on remand substantially differed from the evidence in the initial proceeding and whether this Court's prior ruling on the personal guaranties of [Mr. Schledwitz and Mr. Lynch] was clearly erroneous in light of the expanded trial court findings, which would result in a manifest injustice if allowed to stand.
4. Whether fraud in one document, the guaranty of validity of collateral, which is part of a larger agreement, vitiates the remainder of the agreement, including the personal guaranties of [Mr. Schledwitz and Mr. Lynch].
5. Whether SecurAmerica, a plaintiff with unclean hands, may recover under a personal guaranty for inequitable actions affecting a guaranty of validity of collateral.
6. Whether SecurAmerica's illegal conduct – violating the Business and Industrial Development Corporations ("BIDCO") statute – bars recovery under the personal guaranty.

SecurAmerica asked us to consider the following issues:

1. Can findings and conclusions in a party-prepared order be imputed to the trial court when the court did not state such facts or conclusions in its oral ruling?
2. When findings of fact and conclusions of law are not the result of the trial court's independent judgment, can this Court reform the trial court's order to conform with its oral ruling?
3. Did Schledwitz breach the GVC by failing to monitor the collateral, seizing Southland's assets and failing to collect accounts post default cause damage to SecurAmerica?
4. Did Schledwitz's breaches of the GVC by seizing assets, allowing Southland to place false accounts on its books, and failing to collect accounts post-default cause damage to SecurAmerica?

(continued…)

1. Should this court reconsider our previous ruling in which we affirmed the trial court's determination that the defendants failed to prove fraud?
2. Did the trial court's findings of fact and conclusions of law in its final order reflect its independent judgment?
3. Is Mr. Schledwitz liable to SecurAmerica for breaching the GVC?
4. Did the trial court err by failing to award prejudgment interest to SecurAmerica?
5. Did the trial court err by failing to award attorneys' fees and expenses to SecurAmerica?

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). We review questions of law de novo with no presumption of correctness accorded to the trial court. *Kelly*, 445 S.W.3d at 692.

## ANALYSIS

### I. LAW OF THE CASE – DEFENDANTS' CLAIM OF FRAUD

The defendants contend that the trial court concluded that SecurAmerica committed fraud as to the GVC; therefore, we should reconsider our previous ruling in which we affirmed the trial court's determination that the defendants failed to prove fraud. SecurAmerica insists our previous ruling on the defendants' claim of fraud is the law of the case and the ruling cannot be challenged in this appeal. We agree.

---

5. Should the trial court have awarded prejudgment interest to SecurAmerica pursuant to Tenn. Code Ann. § 47-14-109 as a matter of right?
6. Alternatively, did the trial court err in failing to award prejudgment interest on an equitable basis?
7. Did the trial court err in failing to award all attorney's fees and expenses to SecurAmerica when the guaranties provide that guarantors shall pay "any and all costs and expenses (including attorney's fees and related expenses) incurred by Lender in enforcing any rights under the guaranty?"
8. Does this law of the case govern guarantor's liability under the guaranties?
9. Considering the history of this case and guarantor's fabricated findings of fact and conclusions of law, is an award of damages to SecurAmerica appropriate under Tenn. Code Ann. § 27-1-122, including reinstatement of the 2009 judgments?

The law of the case doctrine "prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). While not mandated by our constitution, the law of the case doctrine is "a long-standing discretionary rule of judicial practice," that "promotes finality and efficiency of the judicial process." *Id.* Our Supreme Court has explained:

> [W]hen an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. There are limited circumstances which may justify reconsideration of an issue which was…decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Id.*

The defendants concede that our previous decision is the law of the case, but they argue that our ruling was erroneous and merits reconsideration to avoid a manifest injustice. We disagree.

In the prior appeal, the defendants contended that the trial court erred by finding that they failed to prove fraud. *See SecurAmerica*, 2014 WL 1266121, at *21. The issue was thoroughly analyzed in our opinion in that appeal, and in the closing paragraph of our analysis we stated:

> Considering the totality of the circumstances, including the Appellees' failure to properly brief this issue, we affirm the decision of the trial court that no reliance was proven in this case. Nothing in the record shows that the Appellees changed their behavior due to the alleged fraudulent activity in this case. The Appellees in this case are undisputedly sophisticated business persons, regarding both business in general and this particular business operation. The Appellees do not argue in their brief that the Guaranty agreements created a fiduciary relationship between SecurAmerica and the Appellees. Further, the trial court found that the Appellees themselves retained a right to inspect the records of Southland after the sale to Mr. Harrell and Mr. Lucchesi, but chose not to exercise that right, instead choosing to remain "uninformed as to the plight of"

Southland Transportation. The evidence in the record does not preponderate against this finding. Thus, information regarding the finances of Southland Transportation was available to the Appellees and they had the opportunity to discover the falsified documents. Under these circumstances, the evidence in the record does not preponderate against the trial court's finding that the Appellees failed to prove justifiable reliance. Without justifiable reliance, there can be no fraud.

*Id*. at \*23 (internal citations omitted). Based on the foregoing and our entire analysis of the issue in that appeal, we affirmed the trial court's ruling that no fraud was committed. *Id*. Our decision constituted the law of the case, the doctrine which "prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." *See Memphis Pub. Co.*, 975 S.W.2d at 306. Accordingly, our previous ruling on the defendants' claim that SecurAmerica committed fraud stands.

## II.     INDEPENDENT JUDGMENT OF THE TRIAL COURT

In Tennessee, trial courts may adopt party-prepared factual findings and legal conclusions as long as those findings and conclusions accurately reflect the trial court's decision. *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 315 (Tenn. 2014); *Williams v. City of Jamestown*, M2015-00322-COA-R3-CV, 2016 WL 3574711, \*3 (Tenn. Ct. App. June 23, 2016). As our Supreme Court has noted, there is a "potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor." *Id*. (quoting *Anderson v. City Bessemer City, N.C.*, 470 U.S. 564, 572 (1985)). Consequently, when we are called on to determine if the trial court exercised its independent judgment, we compare the trial court's oral ruling with its written order. *See Hardy v. Tennessee State University*, No. M2014-02450-COA-R3-CV, 2016 WL 1242659, at \*5 (Tenn. Ct. App. Mar. 24, 2016).

We recognize that a trial court's written order and oral ruling will differ somewhat because written orders often place the litigants' factual and legal disputes "in sharper focus." *Smith*, 439 S.W.3d at 316. When the order is merely a polished version of the oral ruling, we can still attribute the decision to the trial court. *See id*. However, when the written order significantly expands upon the factual findings or legal conclusions of the trial court's oral ruling, such differences cast doubt on whether the written order reflects the independent judgment of the court. *See id*.

SecurAmerica contends the final order, which was prepared by counsel for the defendants, contains numerous findings of fact and conclusions of law that are not the result of the trial court's independent judgment. The defendants insist that when we consider the entire record, "including the oral transcript and the entire hearing session," we will recognize that the order reflects the trial court's independent judgment. Based upon the competing contentions, as we analyze the relevant issues we will first

determine, where relevant, whether the written order reflects the independent judgment of the trial court.

### III.     GUARANTY OF VALIDITY OF COLLATERAL

In its oral ruling from the bench, the trial court found that Mr. Reagan, and consequently SecurAmerica, engaged in a "charade" whereby Mr. Reagan, along with Mr. Harrell, fabricated Southland's accounts receivable. Accordingly, the trial court determined that

> Mr. Reagan and thus SecurAmerica were in the middle of this alteration of the [GVC] contract that was depleting the loan repayment….This Court is of the opinion that the guarantor [Mr. Schledwitz] on this guaranty of validity of collateral as a result of not being part of the agreement to alter the contract, as a result of it no longer being his agreement or what was represented to him or required of him by this lender should be relieved from this contract.

Similar to its oral ruling, the written order concludes that Mr. Schledwitz was not liable for breaching the GVC, finding that

> the lender, through Mr. Reagan, and the debtor, through Mr. Harrell, orchestrated forgeries and diverted funds that undermined the warranty by destroying the collateral's underlying validity and depleted the repayment of the loan. . . . As a result of such unlawful conduct, to which Mr. Schledwitz played no part, the GVC no longer played a relevant part in the agreement as originally intended by the parties when the secured loan was entered into. It was no longer Mr. Schledwitz's agreement or the agreement that was represented to him or required of him by SecurAmerica.

Thus, in both its oral and written rulings, the trial court determined that Mr. Schledwitz was not liable on the GVC because Mr. Reagan and Mr. Harrell altered the agreement without informing Mr. Schledwitz. Accordingly, we have determined that this aspect of the written order accurately reflects the trial court's independent judgment.

However, we agree with SecurAmerica that the written order makes factual findings and draws legal conclusions that stretch well beyond those given by the court in its oral ruling. For example, the written order characterized the GVC as a warranty rather than a guaranty; it determined that SecurAmerica "failed to prove that any purported breach of the GVC proximately caused Plaintiff to suffer damages;" and it concluded that SecurAmerica "breached its duty of good faith and fair dealing." These important legal conclusions; however, were not stated in the trial court's oral ruling.

Moreover, the written order engages in a detailed discussion of matters that were not addressed in the trial court's oral ruling. For example, the order discusses Mr. Schledwitz's transfer of equipment at length:

> Next, the question about the transfer of certain equipment is easily answered. When Southland was reorganized, Mr. Harrell and Mr. Lucchesi purchased the stock. SecurAmerica knew this fact and did not object….The purpose of the transaction regarding the equipment was to improve the company's balance sheet, not hinder it. Mr. Harrell testified that the debt associated with the equipment was owed to another bank, and as a result of the transfer of such equipment, Southland's existing liabilities for ongoing operating expenses decreased….

Furthermore, the written order states:

> [SecurAmerica] also contends that Mr. Schledwitz breached his duty to provide collection services, but that requirement in the GVC requires the lender to "elect" such services. Here, SecurAmerica asked Mr. Harrell, as Southland's representative, to help collect the receivables after the close of the business (2009 Findings p. 12). This satisfied the collection provisions under the GVC….

In its oral ruling, however, the trial court made no such findings. Therefore, the phantom findings and conclusions cannot be accepted as representing the independent judgment of the trial court. Accordingly, we will limit our review of the trial court's decision to the aspects of the order that we have determined accurately reflect the court's independent judgment. Because the trial court adopted its oral ruling and all factual findings in prior orders which were not inconsistent with the decisions of this court, we will also take these findings into consideration, where relevant, in our analysis of this issue.

The trial court determined that Mr. Schledwitz was not liable on the GVC, because by falsifying Southland's accounts receivable, Mr. Reagan and Mr. Harrell altered the agreement without informing Mr. Schledwitz. We agree with the trial court that Mr. Schledwitz is not liable on the GVC, and we affirm the trial court's decision, albeit on different grounds. *See City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004) ("The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result.")

This issue requires us to interpret a contract. The touchstone of contract interpretation is "to ascertain and give effect to the intent of the parties." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting

- 11 -

*Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). We determine the parties' intent "by examining the plain and ordinary meaning of the written words" contained in the contract. *Id.* If the language is plain and unambiguous, as is the case here, the literal meaning controls. *Id.*

The GVC provides in relevant part:

In order to induce SECURAMERICA BUSINESS CREDIT, a BUSINESS AND INDUSTRIAL DEVELOPMENT CORPORATION, a Tennessee corporation (the "Lender"), to enter into that certain Secured Revolving Credit Agreement, dated as of even date herewith…between the Lender and SOUTHLAND TRANSPORTATION COMPANY, LLC, a Tennessee limited liability company ("the Company"), and to induce the Lender to make Advances to the Company, and for other good and valuable consideration, receipt of which is hereby acknowledged, Karl Schledwitz (the "Collateral Guarantor") represents, warrants and guarantees to the Lender, to the best of his knowledge after due inquiry that:

1. All Accounts are subsisting, valid, genuine and authentic.
2. Each Account that constitutes an Eligible Account represents a bona fide existing obligation of a bona fide Account Debtor in the ordinary course of business that will be due and owing in accordance with the terms set forth in the instruments and other documents evidencing such Account.
3. The Collateral Guarantor will at all times act in good faith with respect to the Collateral. The Collateral Guarantor will not, directly or indirectly, be a party to any act, action or proceeding whereby any Accounts are diverted from or not remitted to the Blocked Account, and if the same comes to the attention of such Collateral Guarantor, such Collateral Guarantor will immediately advise the Lender.
4. All reports, statements, certificates and schedules as to quantities, locations and descriptions of Collateral (including, without limitation, all Borrowing Base Certificates, financial reports and statements of the Company submitted to Lender pursuant to the Loan Documents) shall be true and complete in all respects.

.  .  .

7. In the event of any breach of the representations, warranties and guarantees herein contained, the Collateral Guarantor shall be liable to the Lender for any loss or damage suffered by the Lender as a proximate result of such breach, and for costs, expenses and reasonable attorney's fees relating thereto.

Both parties agree that the GVC has the characteristics of a warranty and not a guaranty. A guaranty is a "promise to answer for the payment of some debt." *Black's Law Dictionary* 821 (10th ed. 2014). However, an express warranty, usually given in the context of the buying and selling of goods, is created when the seller makes an affirmation of fact to the buyer which relates to the goods being sold. *See Body Invest, LLC v. Cone Solvents, Inc.*, M2006-01723-COA-R3-CV, 2007 WL 2198230, at *7 (Tenn. Ct. App. Jul. 26, 2007). It is not necessary that the seller use words like "warrant" or "guarantee" to create an express warranty; however in this case, those words are employed throughout the agreement. *See id.* Here, Mr. Schledwitz is not promising to pay Southland's debt; rather, he is giving an express warranty that Southland's accounts receivable are valid and existing. Thus, the primary question before us is whether Mr. Schledwitz breached his express warranty because his assertions about the validity of the collateral were false.

To prove breach of an express warranty, SecurAmerica must show that (1) Mr. Schledwitz made an affirmation of fact intending to induce SecurAmerica to make the loan; (2) SecurAmerica was, in fact, induced by Mr. Schledwitz's warranty; and (3) the affirmation of fact was false regardless of Mr. Schledwitz's knowledge of the falsity or intention to create a warranty. *See id.*

As to the first element, when Mr. Schledwitz signed the GVC, he made assurances that the accounts receivable were valid and existing with the intent to induce SecurAmerica to loan money to Southland. The GVC, itself, provides that

> [i]n order to induce SECURAMERICA…to enter into that certain Secured Revolving Credit Agreement …between the Lender and SOUTHLAND …and to induce the Lender to make Advances to the Company… Karl Schledwitz …represents, warrants and guarantees to the Lender, to the best of his knowledge after due inquiry that [a]ll accounts are subsisting, valid, and authentic.

Therefore, the first element is met.

The second element, however, is not met. It is undisputed that the agreement between SecurAmerica and Southland required Southland to submit borrowing base certificates which identified the amount of eligible accounts receivable. SecurAmerica would then lend money to Southland based on the amount listed on the borrowing base certificates.

In its oral and written rulings, the trial court found that at the time Mr. Schledwitz sold Southland to Mr. Harrell in August 2000, the accounts receivable were bona fide. In its amended findings of fact entered in 2012, the trial court credited an audit conducted

by David Gilcrest, which showed that as of June 2000, just prior to the sale of Southland, Southland's accounts receivable were sufficient to secure the loan. However, the GVC provided that Mr. Schledwitz's obligation was continuing until the loan was paid in full.[3]

In August 2000, when Mr. Schledwitz sold the business to Mr. Harrell and Mr. Lucchesi, he remained liable on the GVC. The trial court found that soon after purchasing the business, Mr. Harrell, with the knowledge and consent of Mr. Reagan, falsified the borrowing base certificates. Since this court previously determined that Mr. Reagan was an agent of SecurAmerica, his actions and omissions are imputed to SecurAmerica. *SecurAmerica*, 2014 WL 1266121, *1. Though Mr. Reagan knew that the borrowing base certificates were false, SecurAmerica continued to make advances to the fledgling business. Those findings were uncontroverted by Mr. Reagan. However, while both Mr. Harrell and Mr. Reagan testified that Mr. Reagan was aware of the fabrication, they disputed the time that Mr. Reagan first became aware.

Mr. Harrell testified that Mr. Reagan knew about the falsification from its inception in August 2000. Mr. Reagan claimed that he did not know until much later. In the trial court's 2012 amended factual findings, the court credited Mr. Harrell's testimony that Mr. Reagan knew about the falsification as early as August 2000 and characterized Mr. Reagan as "evasive and defensive." This court has no reason to question the trial court's credibility findings. *See Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (Appellate courts afford trial courts considerable deference when reviewing issues that hinge witness credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses.") Therefore, SecurAmerica knew that the accounts receivable were invalid at all times relevant; yet it continued to make advances to Southland.

As noted earlier, SecurAmerica had the burden to prove that it was, in fact, induced by Mr. Schledwitz's warranty when it loaned money to Southland. As of August 2000, SecurAmerica knew the accounts receivable were non-existent; yet it still made advances to Southland. Because SecurAmerica failed to prove an essential element of its claim for breach, Mr. Schledwitz is not liable on the warranty.

Our analysis, however, does not end there. SecurAmerica also claims that Mr. Schledwitz breached two additional obligations under the GVC by transferring Southland's equipment and by refusing to assist with collections upon Southland's default. While the trial court addressed these two issues in its written order, we have determined that the trial court's findings on these issues did not reflect the court's

---

[3] The relevant provision states: "This Guaranty of Validity of Collateral is a continuing agreement and shall remain in full force and effect until all of the Liabilities have been indefeasibly paid in full and the Lender's commitment to extend credit under the Agreement has terminated."

independent judgment. In its oral ruling the trial court merely concluded that Mr. Schledwitz was not liable on the GVC, without making any specific findings about Mr. Schledwitz's transfer of equipment or Mr. Schledwitz's refusal to assist with collections.

Generally, when a trial court fails to explain the factual basis for its decisions pursuant to Rule 52.01**,** the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (quoting *Lake v. Haynes,* No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). However, when faced with a trial court's failure to make specific findings, this court has previously held that the appellate courts may "soldier on" when the case involves only a clear legal issue, or when the court's decision is "readily ascertainable." *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012) (internal citations omitted). In these instances, we are permitted to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015); *See also Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013); *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005).

Because these questions primarily involve contract interpretation, which is a legal issue, and the answer to these questions is readily ascertainable based on a review of the contract and the record, we will "soldier on," despite a lack of findings in the trial court's decision regarding these two provisions in the GVC.[4]

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC– Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01–9511–CV–00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)).

First, SecurAmerica claims that Mr. Schledwitz breached the GVC by transferring certain equipment from Southland when he sold the business, which Southland used as collateral for the loan with SecurAmerica. The relevant provision states:

> The Collateral Guarantor will at all times act in good faith with respect to the Collateral. The Collateral Guarantor will not, directly or indirectly, be a party to any act, action or proceeding whereby any Accounts are diverted

---

[4] Our decision to "soldier on" is also motivated by the fact that the judge who tried this case retired shortly after entering the final order, before this appeal was taken.

from or not remitted to the Blocked Account, and if the same comes to the attention of such Collateral Guarantor, such Collateral Guarantor will immediately advise the Lender.

We, however, find this argument unavailing because the term "Collateral" does not include equipment. To the contrary, the GVC, in general, and this provision in particular, were solely concerned with Southland's accounts receivable. Therefore, Mr. Schledwitz's act of transferring Southland's equipment did not breach the GVC.

SecurAmerica also contends that Mr. Schledwitz breached the GVC because the GVC required Mr. Schledwitz to assist with collecting on the accounts receivable upon default, and Mr. Schledwitz declined to do so. This contention is based on the following provision:

> 7. If an Event of Default exists and the Lender commences to liquidate and realize upon the Collateral, then the Collateral Guarantor will exercise his best efforts in an appropriate manner to obtain maximum collections with respect to the Collateral. To that effect, the Collateral Guarantor will, as the Lender may elect, act as the Lender's agent or representative for a period, in the Lender's discretion, of up to six months from the date of Lender's declaration of such Event of Default (the "Post Default Period").

For his part, Mr. Schledwitz denies breaching this clause in the GVC. SecurAmerica directs our attention to the testimony of James Sherman, an individual SecurAmerica hired to assist with collections when Southland defaulted on the loan. SecurAmerica claims that Mr. Sherman asked Mr. Schledwitz to assist with collections and Mr. Schledwitz refused. The relevant testimony is as follows:

[Mr. Sherman]. SecurAmerica through a couple other people had put a lot of effort, a lot of time and actually had worked with Mike Harrell to try to collect on outstanding receivables. **It got to a point where the remaining receivables—it appeared they were totally uncollectible**.

Q. Do you recall sitting here today roughly the amount?

A. Roughly $300,000 to $400,000 in that range.

Q. You determined them to be uncollectible?

A. Yes.

Q. Why?

A. Because either they were receivables that were these three digits receivables where they really are not real receivables or, you know, they were just companies like Hunt-Wesson or another big customer that they were not real receivables. **So that was what he had kind of come to that kind of like the bottom of it and that was about it. About that time I started I made a call to Mr. Schledwitz to try to collect on the loan**...

.  .  .

A. [At the meeting with Mr. Schledwitz] I said well, Karl, we've done everything we can to collect them. He said did you talk to Mike Harrell. I said Mike Harrell has been trying to collect receivables to help SecurAmerica help collect receivables. I said can you offer us any help? **At that point in time well, you know, if you had Mike do it there is nothing else I can offer**.

(Emphasis added). The foregoing testimony reveals that when Southland defaulted on the loan, SecurAmerica asked Mr. Harrell and Mr. Sherman to assist with collections, not Mr. Schledwitz. More importantly, it was not until after there was nothing else to do that Mr. Schledwitz was asked to assist. Because collection efforts were a lost cause before Mr. Schledwitz was asked to assist, SecurAmerica suffered no damages as a result of Mr. Schledwitz's refusal. The remaining accounts receivable were non-existent and further collection attempts would have been futile.

Accordingly, we affirm the trial court's decision that Mr. Schledwitz is not liable to SecurAmerica on the GVC.

## IV.   PREJUDGMENT INTEREST

In its oral ruling from the bench, the trial court stated that SecurAmerica was "the architect of its own dilemma;" thus, it would not award prejudgment interest "in light of the fact of SecurAmerica's wrongdoings." The written order stated essentially the same with more polish:

A decision to award or deny prejudgment interest is within the trial court's sound discretion. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Moreover, a trial court may deny prejudgment interest if a litigant's business methods led to the litigation at issue as it did here. *Harrison v. Laursen*, 128 S.W. 204, 210 (Tenn. Ct. App. 2003)(citation omitted) ("[W]e have allowed a denial of interest when the plaintiff's business methods led to the lawsuit."); *see also Craftbuilt Mfg. Co. v. United Window Co.*, 2000 WL 281659 (Tenn. Ct. App. Mar. 16, 2000).

This Court has determined that SecurAmerica came into the Court with unclean hands, seeking equity, when it has committed wrong against the Defendants by violating its own contract. SecurAmerica was the architect of its own dilemma by engaging in an illegal circumvention and wrongful alteration of the original contract.

Thus, we can safely attribute this ruling to the trial court's independent judgment. However, the written order makes significant additional findings that were not expressed in the oral ruling:

It would be inequitable to award SecurAmerica prejudgment interest when it had breached the subject loan document by engaging in unlawful and deceptive conduct that violated the BIDCO statute upon which it was chartered, and was patently unfair, not only to the Defendants, but also to the Tennessee Department of Financial Institutions, SecurAmerica's lender TransAmerica, and its own Board of Directors….Mr. Schledwitz reasonably relied upon the representations of Reagan who admitted that he participated in this charade in order to save himself and his company, SecurAmerica.

Because these additional conclusions go well beyond a mere polishing of the trial court's decision, we will not attribute the additional determinations that SecurAmerica violated the BIDCO statute and that Mr. Schledwitz reasonably relied upon the representations of Mr. Reagan to the trial court's independent judgment.

Applying equitable principles, the trial court ruled that SecurAmerica was not entitled to prejudgment interest on the personal guaranties because SecurAmerica engaged in wrongdoing. SecurAmerica argues that it has a statutory right to prejudgment interest, and we agree.

In *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), the Supreme Court stated that prejudgment interest is recoverable as a matter of right under Tenn. Code Ann. § 47-14-109, which provides:

(a) Interest on negotiable and nonnegotiable instruments shall accrue according to the terms of the instrument; otherwise, interest on the instrument shall accrue as provided in § 47-3-112.

(b) Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.

- 18 -

(c) In all other cases, the time from which interest is to be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.

Both Mr. Schedwitz and Mr. Lynch signed personal guaranties stating that they "unconditionally and irrevocably guarantee[] the punctual payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all of the Liabilities up to Five Hundred Thousand Dollars ($500,000)" owed by Southland under the Credit Agreement with SecurAmerica. Because these are liquidated, settled accounts signed by both debtors, the lender, SecurAmerica, is entitled to prejudgment interest as a matter of law.

"A guarantor is generally liable for interest accruing on the principal obligation, even . . . if this brings the total liability above the limit fixed in the guaranty." 38A *C.J.S. Guaranty* § 63 (2017). The applicable interest rate is found in Article 2 of the Credit Agreement, which provides:

2.5 <u>Interest Rate</u>. The outstanding principal balance of each Advance shall bear interest at a variable per annum rate equal to the latest published prime rate which appears in the "Money Rates" section of The Wall Street Journal plus three and one-half percent (3.5%). Adjustments in the variable interest rate shall be made on the same day as each change in the Governing Rate.

Therefore, we reverse the trial court's decision to deny prejudgment interest. On remand, the trial court is to award prejudgment interest in accordance with the Credit Agreement.

## V.    ATTORNEY'S FEES

In the trial court's original judgment in 2009, it found that Mr. Schledwitz and Mr. Lynch were liable on their personal guaranties and awarded SecurAmerica $125,000 in attorney's fees against each guarantor. On appeal, we vacated the trial court's original judgment. *See SecurAmerica*, 2011 WL 3808232, at *13. When on appeal for the third time in 2016, we ruled that Mr. Schledwitz and Mr. Lynch were liable on their personal guaranties. *See SecurAmerica*, 2016 WL 1292087, at *1. We noted that the trial court had not addressed the issue of attorney's fees since the original judgment. *See id.* at *8. This court then remanded the case to the trial court to determine whether SecurAmerica was entitled to attorney's fees under the personal guaranties. *See id.*

On remand, the trial court reinstated the original award of $125,000 but refused to award any additional attorney's fees. SecurAmerica argues that the trial court erred because the personal guaranties contained an attorney's fees provision. We agree.

Litigants must pay their own attorney's fees absent a statute or agreement providing otherwise. *Cracker Barrel Old Country Store v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009). Courts should enforce provisions in contracts that expressly allow a party to recover its attorney fees incurred in disputes over a contract. *Id*. at 310. The entitlement to recover attorney's fees, however, is limited to the situation agreed to by the parties in the contract, and the fee provision is subject to the rules of contract interpretation. *Clark v. Rhea*, No. M2002-02717-COA-R3-CV, 2004 WL 63476, at *2 (Tenn. Ct. App. Jan. 13, 2004). Appellate review of the trial court's interpretation of a fee provision in a contract is de novo. *Id.*

The personal guaranties provide that the "Guarantor hereby . . . agrees to pay any and all costs and expenses (including attorney's fees and related expenses) incurred by the Lender in enforcing any rights under this Guaranty." This provision could not be any clearer. Per the agreement between the parties, SecurAmerica is entitled to all reasonable attorney's fees it incurred to enforce the defendants' liabilities under the guaranties. Accordingly, we reverse the trial court's decision and remand this case to the trial court to determine the proper amount.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Karl Schledwitz and Terry A. Lynch, jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.